UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SCOT G. JUDD,

               Plaintiff,

v.

                                      **DECISION AND ORDER**
                                         **17-CV-1188**
NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

               Defendant.

_____

## INTRODUCTION

        Plaintiff Scot Judd brings this action pursuant to the Social Security Act ("the

Act") seeking review of the final decision of the Acting Commissioner of Social Security

that denied his application for supplemental security income ("SSI") under Title XVI of the

Act.  ECF No. 1.  The Court has jurisdiction over this action under 42 U.S.C. § 405 (g).

        Both parties moved for judgment on the pleadings pursuant to Federal Rule

of Civil Procedure 12(c).  ECF Nos. 8, 11.  For the reasons that follow, the Plaintiff's

motion is GRANTED and the Commissioner's motion is DENIED.


## BACKGROUND

        On October 8, 2014, Plaintiff applied for SSI with the Social Security

Administration ("SSA").  Tr.[1] 175-180.  He alleged disability since June 24, 2011 due to

lower back pain and brain surgery.  Tr. 91, 207.  On May 12, 2016, Plaintiff and a

vocational expert ("VE") appeared via video hearing and testified before Administrative

Law Judge Laureen Penn ("the ALJ").  Tr. 49-89.  On June 21, 2016, the ALJ issued a

_____
[1] References to "Tr." are to the administrative record in this matter.

decision finding that Plaintiff was not disabled within the meaning of the Act. Tr. 104-117.

Thereafter, Plaintiff commenced this action seeking review of the Commissioner's final

decision. ECF No. 1.


## LEGAL STANDARD

### I.     District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining

whether the SSA's conclusions were supported by substantial evidence in the record and

were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir.

2012) (quotation marks omitted); see also 42 U.S.C. § 405(g). The Act holds that a

decision by the Commissioner is "conclusive" if it is supported by substantial evidence.

42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means

such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted).

It is not the Court's function to "determine de novo whether [the claimant] is disabled."

*Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); see also

*Wagner v. Sec'y of Health and Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding

that review of the Secretary's decision is not de novo and that the Secretary's findings

are conclusive if supported by substantial evidence).


### II.    Disability Determination

An ALJ must follow a five-step process to determine whether an individual

is disabled under the Act. See *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). At step

one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual

functional capacity to perform the alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.    The ALJ's Decision

The ALJ's decision analyzed Plaintiff's claim for benefits under the process described above. At step one, the ALJ found the Plaintiff had not engaged in substantial gainful activity since October 8, 2014, the application date. Tr. 109. At step two, the ALJ found that Plaintiff has the following severe impairments: lumbago with sciatica; lumbosacral radiculopathy; history of spina bifida occulta; status post-craniotomy for left epidural hematoma; and attention deficit hyperactivity disorder (ADHD) secondary to traumatic brain injury. *Id.* Also, at step two, the ALJ found the Plaintiff has the following non-severe impairments: cannabis abuse in full remission; history of asthma; and traumatic cerebral edema with loss of consciousness. *Id.* At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 110.

Next, the ALJ determined that Plaintiff retains the RFC to perform light work[2] with additional limitations. Specifically, the Plaintiff can stand/walk for two hours of an

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

eight-hour workday; can never climb ladders ropes or scaffolds; can occasionally climb ramps and stairs; can occasionally kneel, stoop, crouch and crawl; would need to avoid concentrated exposure to fumes, odors, dust, gases, poor ventilation and other pulmonary irritants; would need a cane to ambulate; and could perform simple, routine, repetitive work. Tr. 111.

At step four, the ALJ found that Plaintiff cannot perform his past relevant work as a child monitor, leasing/rental agent, and store laborer/overnight stocker. Tr. 115. At step five, the ALJ relied on the VE's testimony and found that Plaintiff can adjust to other work that exists in significant numbers in the national economy given his RFC, age of 32-years on the alleged onset date, and high school education. *Id.* Specifically, the VE testified that Plaintiff could perform the requirements of representative light, unskilled, SVP 2, occupations such as photocopy machine operator, mail clerk, and marker. Tr. 116. The ALJ also noted that although the DOT does not account for the use of a cane, the VE testified to jobs that can be performed while needing a cane to ambulate. *Id.* Accordingly, the ALJ concluded that Plaintiff was not "disabled" under the Act. *Id.*

## II. Analysis

Plaintiff argues that remand is required because the ALJ erred in determining Plaintiff's RFC. ECF No. 8 at 10. Specifically, Plaintiff argues the ALJ improperly relied on her own lay opinion where she found Plaintiff could perform a range of "light work" after only after improperly rejecting all of the medical opinions on Plaintiff's exertional limitations. ECF No. 8 at 10. The Commissioner contends the ALJ properly

analyzed the medical opinion evidence in determining Plaintiff's RFC. ECF No.11 at 17. The Court agrees that remand is required for the reasons that follow.

## A. RFC Analysis of Plaintiff's Exertional Limitations

The ALJ concluded that Plaintiff was able to perform "light work," which requires the ability to lift up to twenty pounds occasionally with frequent lifting or carrying of objects weighing up to ten pounds. 20 C.F.R. 404.1567(b). To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of the required activity, including the exertional limitations[3]. See *Id.* Exertional limitations include limitations and restrictions of physical strength affecting an individual's ability to perform the strength demands of jobs including: sitting, standing, walking, lifting, carrying, pushing and pulling. 20 C.F.R. § 404.1569. Here, the ALJ found that the Plaintiff can stand/walk for two hours of an eight-hour workday; can never climb ladders ropes or scaffolds; can occasionally climb ramps and stairs; can occasionally kneel, stoop, crouch and crawl; would need to avoid concentrated exposure to fumes, odors, dust, gases, poor ventilation and other pulmonary irritants; would need a cane to ambulate; and could perform simple, routine, repetitive work. Tr. 111. The ALJ did not discuss the plaintiff's ability to push and pull in her decision. The ALJ's assessment of Plaintiff's ability to lift/carry and stand/walk consisted of the following statement:

> "Plaintiff's severe impairments including: lumbago with sciatica; lumbosacral radiculopathy; history of spina bifida occulta; status post-craniotomy for left epidural hematoma; and ADHD secondary to traumatic brain injury, "restrict his ability to lift and carry consistent with the

---

[3] Plaintiff does not challenge the mental limitations determined by the ALJ, therefore the Court will not address them in this decision.

light exertional level with the above postural, environmental and mental health limitations.  Such conditions also limit the claimant to standing/walking to two-hours of an eight-hour workday and would require the claimant to have a cane to ambulate." Tr. 114.

In conclusion, the ALJ stated that the RFC was "supported by objective signs and findings in the record and the opinions of the internal medical examiner (in part), the State agency psychological consultant, and the psychological consultative examiner (in part)[4]." Tr. 115.

## A.    Medical Opinion Evidence

Plaintiff argues the ALJ improperly discredited medical opinions from internal medicine consultative examiner Harbinder Toor, M.D. ("Dr. Toor"); treating neurologist Nithyanandini Namassivaya, M.D. ("Dr. Namassivaya"); and primary care provider Eugene Ver, M.D. ("Dr. Ver") in determining Plaintiff's RFC.  ECF No. 8 at 12. When determining a claimant's RFC, the SSA's regulations require the Commissioner to "evaluate every medical opinion it receives, regardless of its source."  *Young v. Berryhill*, No. 15-CV-6711-FPG 2017 WL 1196472 at *3 (W.D.N.Y. March 31, 2017); (citing 20 C.F.R. § 404.1527 (c)).  The ALJ must consider the following factors when he or she weighs a medical opinion: (1) whether the source examined the claimant; (2) whether the opinion was rendered by a treating source; (3) whether the source presented relevant evidence to support the opinion; (4) whether the opinion is consistent with the record as a whole; (5) whether the opinion was rendered by a specialist in his or her area of expertise; and (6) other factors that tend to support or contradict the opinion.  20 C.F.R.

---

[4] The State agency psychological consultant and the psychological consultative examiner did not opine on Plaintiff's physical functional capabilities.

§ 416.927 (c)(1)-(6). After considering these factors, the ALJ must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); see also 20 C.F.R. § 404.1527(d)(2) (stating that the agency "will always five good reasons in our notice of determination or decision for the weight we give [the claimant's treating source's opinion"). As explained by the Second Circuit Court of Appeals:

> An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various "factors" to determine how much weight to give to the opinion. 20 C.F.R. § 404.1527(d)(2). Among these factors are: (i)the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. Id. at 32.

Under the treating physician rule, the ALJ must give controlling weight to a treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see also Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal citation and quotation marks omitted).

### 1. Dr. Toor

First, Plaintiff contends that the ALJ erred in rejecting the only medical source opinion in the medical record, issued by consultative examiner Dr. Toor, on January 6, 2015. ECF No. 8 at 12-13. The ALJ specified that she accorded "less weight" to Dr. Toor's opinion because it "failed to specify the amount of weight the [Plaintiff] can lift and carry and duration that he can sit, stand and walk, given his back impairments." Tr. 114. Upon examination, Dr. Toor opined that "[Plaintiff] has moderate to severe

limitation with standing, walking, bending, and lifting;" and that "pain/weakness in the legs would interfere with his balance and physical activity." Tr. 324. Dr. Toor also opined that the Plaintiff would have moderate limitations in sitting for extended periods of time and would need to avoid irritants that could exacerbate his asthma. Tr. 325. The ALJ accorded "some weight" Dr. Toor's opinion that Plaintiff should avoid irritants because it was consistent with the Plaintiff's documented asthma. Despite discrediting the exertional limitations identified for vagueness, the ALJ accorded "some weight" to the portion of Dr. Toor's opinion where it indicated "the severe nature of the Plaintiff's lumbar spine condition." Tr. 114. The ALJ did not specify *how* the opinion indicated the severe nature of Plaintiff's lumbar spine condition.

This Court recognizes that, as a one-time consultative examiner, Dr. Toor is not entitled to the same deference as a treating physician. *See Burgess*, 537 F. 3d at 128. (explaining that treating physician's opinions are generally given "controlling weight"). However, here the relevant inquiry is whether the ALJ provided an adequate explanation for how the Plaintiff could perform light work, despite the moderate to severe limitation with standing, walking, bending and lifting identified by the consultative examiner. *See Collier v. Colvin*, No. 15-CV-230-FPG, 2016 WL 4400313, *3 (W.D.N.Y. August 17, 2016) ("[B]ased on all of the objective medical evidence set forth in [the consultative examiner's] report and [the Dr.'s] medical source statement that spoke directly to [the claimant's] functional abilities . . . the ALJ properly relied on [the consultative examiner's] opinion…"); *Alvarez v. Colvin*, No. 15-CV-6193 2016 WL 5791205, *9 (W.D.N.Y. 2016) ("[t]hough plaintiff criticizes the ALJ for discounting [the consultative physician's] opinion, that

opinion is but one piece of a voluminous medical history and record[;] [m]oreover, in her decision, [the ALJ] cited several medical opinions and other record evidence that supported her RFC determination").

Dr. Toor's opinion is the only medical source statement in the Plaintiff's medical record. By rejecting Dr. Toor's medical source statement concerning Plaintiff's exertional limitations, the ALJ created a gap in the record and relied on her own interpretation of the medical evidence to determine them, which is impermissible. *See Giddings v. Astrue*, 333 Fed.Appx. 649, 652 (collecting cases) (ALJ did not refer to *any* medical opinion that contradicted the medical opinion of the consultative examiner as to claimant's ability to sit, stand, or walk during the day. "[W]hen a medical opinion stands uncontradicted, '"[a] circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome" " it".). Here, the ALJ failed to explain how, despite Dr. Toor's opinion that Plaintiff "has moderate to severe limitation with standing, walking, bending, and lifting" and that "pain/weakness in the legs would interfere with his balance and physical activity," Plaintiff could perform the physical functions of light work, including the ability to occasionally lift up to twenty pounds and frequently lift up to ten. See 20 C.F.R. § 404.1545(b); SSR 96-8p, 1996 WL 374184, at *1(1996). ("The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545… Only after that may RFC be expressed in terms of the exertional levels of work…"). The ALJ's rejection of the only medical source opinion discussing Plaintiff's physical limitations and

subsequent failure to provide an explanation regarding Plaintiff's functional capacity despite the physical limitations identified within the medical source opinion. This error requires remand for further explanation by the ALJ.

### 2. Dr. Namassivaya

Next, the Plaintiff argues that the ALJ improperly rejected the opinion of Plaintiff's treating neurologist, Dr. Namassivaya. ECF No. 8 at 13. This Court agrees. The medical record reflects that Dr. Namassivaya regularly treated Plaintiff over a period of three years beginning on December 6, 2012, through November 3, 2015. Tr. 277-310, 328-339. In her decision, the ALJ accorded "little weight" to Dr. Namassivaya's February 2015 opinion that the Plaintiff was "unable to work" where she found the opinion "inconsistent with the claimant's pain of 4-6 on a 10-point scale and mild weakness with hip flexion." Tr. 115. Upon examination in February, Dr. Namassivaya noted that the Plaintiff complained of exacerbated back pain (7/10 pain scale), after falling in his driveway. Tr. 328-330. Dr. Namassivaya observed Plaintiff's antalgic gait, failed tandem walk, tenderness in the lumbar spine, impaired "LLE", moderate pain with motion, joint tenderness, and mild left hip flexion weakness. Tr. 329. Dr. Namassivaya diagnosed Plaintiff with lumbago (fair control) and scroiliac (ligament) sprain, prescribed medications (Gabapentin, Ultram, and Mobic) and a TENS unit for pain control. Tr. 330. Treatment notes from that day also reflect that Dr. Namassivaya prepared paperwork for SSI disability as Plaintiff was "unable to work" at the time and the doctor discussed the possibility of vocational rehab for the Plaintiff to seek if his pain improved. Tr. 330-331.

Next, the ALJ accorded "little weight" to Dr. Namassivaya's November 2015 opinion, concluding that it appeared "temporary" and "inconsistent with the record, of 2-3 pain on the 10-point scale and normal gait." Tr. 115. Upon examination on November 3, 2015, Dr. Namassivaya noted that Plaintiff reported severe pain (8/10) after he chose to discontinue two medications (Ultram and Mobic) due to side effects and reduced his Gabapentin dosage from four times per day to once daily. Tr. 336. Dr. Namassivaya noted Plaintiff's joint pain, extremity weakness, gait disturbance, headache, joint swelling, muscle weakness, moderate pain with motion, tenderness of the lumbar spine, and impaired LLE below the knee. Tr. 336. Dr. Namassivaya diagnosed Plaintiff with low back pain, increased his Gabapentin dosage, continued his "TENS[5]" unit, and authorized Plaintiff to perform "part-time work" with a restriction of lifting up to twenty pounds. Tr. 338.

The Commissioner contends that the ALJ properly discounted Dr. Namassivaya's opinion where it concerned the ultimate issue of disability which is reserved for the Commissioner to determine. ECF No. 11 at 21 (citing 20 C.F.R. § 416.927(e)(1); Snell, 177 F.3d 128, 133 (2d Cir. 1999). It is true that the Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and that a medical source's opinion that a claimant is "disabled" or "unable to work" does not mean the Commissioner must find that claimant disabled. 20 C.F.R. § 404.1527(d)(1). However, the ALJ never stated that she was discounting the opinion because it concerned an issue reserved to the Commissioner. The Commissioner may not substitute her own rationale where the ALJ failed to provide one. Snell, 177 F.3d at

---

[5] Transcutaneouselectrical nerve stimulation.

134 ("A reviewing court may not accept appellate counsel's post hoc rationalizations for agency action.") (quotation marks and citation omitted).

The ALJ was still obligated to provide good reasons to explain why the treating physician's opinion was not credited. *Snell*, 177 F.3d at 134. (The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, even—and perhaps especially—when those dispositions are unfavorable.) (emphasis added). Here, the ALJ failed to provide good reasons for discrediting Dr. Namassivaya's opinion where the ALJ misstated the treatment record in the reasoning she provided for discrediting the opinion.[6]

### 3. Dr. Ver

Finally, Plaintiff argues the ALJ improperly disregarded the medical opinion of his primary care provider, Dr. Ver. ECF No. 8 at 14. Dr. Ver regularly treated the Plaintiff for a period of two years from March 7, 2012 to August 28, 2014. Tr. 340-368 (Ex.7F). In her decision, the ALJ accorded "little weight" to two of Dr. Ver's opinions. Tr. 115. First, the ALJ discounted Dr. Ver's March 2012 opinion that Plaintiff could not work until his back pain was fully investigated. Tr. 115. The ALJ stated the opinion appeared "temporary in nature." Tr. 115. According to Dr. Ver's treatment notes from Plaintiff's March 2012 examination, Plaintiff needed to wait to work until his back issues were

---

[6] For example, the ALJ found the November 2015 opinion was inconsistent with the record of 2/3 pain where the treatment notes reflect an 8/10 pain level and gait disturbance. Tr. 336. Similarly, the ALJ found the February 2015 opinion inconsistent with the record of Plaintiffs 4/6 pain level and mild weakness with hip flexion where treatment notes reflect 7/10 pain, antalgic gait, failed tandem walk, lumbar spine tenderness, impaired LLE, moderate pain with motion, joint tenderness, and mild left hip flexion weakness. Tr. 329.

investigated (for which an MRI was ordered and medication prescribed and until he improved enough to sustain meaningful employment.) Tr. 115.

Second, the ALJ discredited Dr. Ver's March 2013 opinion that Plaintiff should avoid jobs requiring him to lift over ten pounds because it was "inconsistent with the Plaintiff's report that he shoveled snow and that he exhibited no pain with the rest of the lower back and only mild pain with movement as well as normal flexion, extension and right and left rotation and bending." Tr. 115. Upon examination of the Plaintiff on March 13, 2013, Dr. Ver noted the Plaintiff discussed his plans to apply for Social Security disability due to his chronic low back pain which he described as preventing him from doing any work requiring lifting, bending, stooping, pushing or pulling. Tr. 343. Dr. Ver also noted that Plaintiff admitted he had recently shoveled snow and felt his back was sore the next day. *Id.* Ultimately, Dr. Ver assessed Plaintiff with spina bifida occulta/lumbar pain, prescribed medications, recommended stretching and noted that Plaintiff would benefit from vocational training that would fit his capabilities. *Id.* Dr. Ver also opined that Plaintiff needed to avoid a job that would require him to lift over ten pounds and should not perform repeated bending, stooping, crouching, and crawling. *Id.*

Here, Dr. Ver's 2013 opinion that Plaintiff should avoid jobs requiring him to lift over ten pounds conflicts with the ALJ's RFC determination and the ALJ failed to discuss how, despite Dr. Ver's opinion, Plaintiff can perform the physical functions of light work, including the ability to occasionally lift up to twenty pounds and frequently lift up to ten. *See* 20 C.F.R. § 404.1545(b); SSR 96-8p, 1996 WL 374184, at *1(1996). ("The RFC

assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545… Only after that may RFC be expressed in terms of the exertional levels of work…").

Additionally, according to subsequent treatment notes, Matthew Wiza, DO, another provider within Dr. Ver's office took over Plaintiff's primary care and completed an employment assessment for the Plaintiff on February 28, 2014. Tr. 363. Although the ALJ referenced treatment notes from Dr. Wiza in her decision (Tr. 112 ref. ex. 12F), the ALJ failed to identify the amount of weight she accorded to Dr. Wiza's opinion and failed to request the employment assessment prepared by the doctor on behalf of the Plaintiff. The ALJ has an affirmative duty to develop the administrative record due to the "essentially non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). Specifically, the ALJ must develop a claimant's "complete medical history" for at least the 12 months preceding the month in which the claimant filed his or her application. 20 C.F.R. §§ 404.1512(b), 416.912(b). The ALJ must "make every reasonable effort" to help the claimant get medical reports from his or her medical sources as long as the claimant has permitted the ALJ to do so. *Id.* Remand is warranted if the ALJ fails to fulfill their duty to develop the record. *Pratts*, 94 F.3d at 39. On the other hand, where there are no "obvious gaps" in the record and a "complete medical history" exists, the ALJ is not obligated to seek additional evidence. *Rosa*, 168 F.3d at 79 n.5. Here, the ALJ did not discuss or obtain the employment assessment prepared by this

provider for the Plaintiff in February 2014 despite finding the 2012 opinion "temporary" and the 2013 opinion inconsistent with the examination notes.

### 4. Dr. Hilburger

In January and February of 2016, Plaintiff was examined by another neurologist, Andrew Hilburger, M.D. ("Dr. Hilburger). Tr. 390-405 (Ex. 10F). Although the ALJ discussed the doctor's medical findings including the results of objective medical testing and treatment notes, the ALJ did not identify or evaluate an amount of weight that she accorded to the doctor's opinion. Plaintiff underwent an EMG of his left leg, MRI of his lumbar spine, and EEG to evaluate possible seizure activity related to his prior brain injury/surgery. Tr. 391. On January 4, 2016 Dr. Hilburger authored a note instructing Plaintiff to refrain from work until February 8, 2016. Plaintiff testified during the hearing that due to his back pain, he would be lucky to lift five pounds and would be unable to lift an eight-pound gallon of milk without experiencing pain. Tr. at 70. Here, after discussing Dr. Hilburger's medical notes and objective testing results, the ALJ found,

> "The mild-to-moderate findings upon objective testing and physical examination and improvement in the [Plaintiff's] condition with medication suggest that the s everity of the [Plaintiff's] lumbago with sciatica and lumbosacral radiculopathy is not to the degree alleged." Tr. 113.

This evidence, which contains complex medical findings like MRI results, does not permit the ALJ to render a common-sense judgment about functional capacity. Ultimately, the ALJ relied on Dr. Hilburger's opinion to discredit the Plaintiff's statements regarding the disabling effects severe impairments in error where the ALJ summarized the doctor's medical evidence yet failed to identify the amount of weight that she accorded to the doctor's opinion.

## B. ALJ's Rejection of Medical Opinion Evidence

Regardless of whether the ALJ properly discounted the opinions of Dr. Ver, Dr. Namassivaya, and Dr. Toor, her rejection of all of the medical opinions as to Plaintiff's physical functional capabilities left a significant gap in the record. *See Martin v. Berryhill*, No. 16-CV-6184-FPG 2017 WL 1313837, at *3 (W.D.N.Y. 2017) (citing *Covey v. Colvin*, 204 F. Supp. 3d 497, 507 (W.D.N.Y. 2016) (noting that the ALJ's rejection of the treating physician's opinion created a "significant and obvious gap in the evidentiary record" because "the record contained no competent medical opinion regarding Plaintiff's RFC during the relevant time period.") (emphasis in original).

It is unclear to the Court how the ALJ, who is not a medical professional, determined the RFC without a medical source statement or consultative examination report to assist her in correlating the medical treatment notes into an assessment of Plaintiff's physical capacity for work-related activities. The decision demonstrates the ALJ's reliance upon her own lay opinion to determine Plaintiff's RFC, an error requiring remand. *See Hillsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010) ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician and has committed legal error.") (citations omitted). "[A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result and ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Wilson v. Colvin*, No. 13-CV-6286-FPG, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (citation omitted).

Thus, even though the Commissioner is empowered to make the RFC determination, "[w]here medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities," the general rule is that the Commissioner "may not make the connection himself." *Id.* (citation omitted). Additionally, the regulations require that "[t]he RFC assessment … include a narrative discussion describing how the evidence supports each conclusion, citing specific medial facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Hogan v. Astrue*, 491 F. Supp. 2d 347, 354 (W.D.N.Y. 2007) (quoting SSR 96-8P, 1996 WL 374184, at *7 (1996)). (finding error in ALJ's failure to "determine plaintiff's ability to sit, stand, walk, lift and carry" as required by the regulations). When the ALJ formulates the RFC without a medical opinion, he must "provide a function-by-function analysis of [the claimant]'s work-related capacity." *Perkins v. Berryhill*, No. 17-CV-6327-FPG 2018 WL3372964 at *4 (W.D.N.Y. July, 11, 2018) (citation omitted).   In determining Plaintiff's RFC, the ALJ summarized treatment notes and objective medical test results from the medical record for the Plaintiff's severe impairments and failed to relate the medical evidence to the physical functional demands of light work.  Tr. 112-115.

Therefore, the Court finds that the RFC is unsupported by substantial evidence where the ALJ rejected all medical opinions regarding Plaintiff's exertional limitations. *See Hunt v. Commissioner*, No. 16-CV-518-FPG 2017 WL at *6 (W.D.N.Y. April 17, 2017) (ALJ's vague statement rejecting four medical opinions at once because

"they are nonspecific" was insufficient; even though the opinions lacked evidence that claimant was disabled.) The ALJ's RFC determination lacks support from any medical opinion as to Plaintiff's physical ability to engage in work at any exertional level on a regular and continuous basis in an ordinary work setting. Without a discussion that relates the medical evidence to the requirements of light work or reliance on a medical source's opinion as to Plaintiff's functional capacity, the ALJ's decision leaves the Court with many unanswered questions and does not afford an adequate basis for meaningful judicial review. *See Cichocki,* 729 F.3d at 177-78. (noting that the ALJ is not required to perform an explicit function-by-function RFC analysis but that "[r]emand may be appropriate … where other inadequacies in the ALJ's analysis frustrate meaningful review") (citation omitted). Accordingly, this matter must be remanded for the Commissioner to provide good reasons for not crediting any of the medical opinions regarding Plaintiff's physical limitations, and, if necessary, further development of the record, e.g., by consulting examining and treating physicians about Plaintiff's exertional limitations during the pertinent time period. See Butts v. Barnhart, 388 F.3d 377, 386 (2d Cir. 2004) ("[W]here the ALJ failed to develp the record sufficiently to make appropriate disability determinations, a remand for further findings [that] would so plainly help to ssure the proper disposition of [the] claim … is particularly appropriate." (internal quotation marks omitted)), *amended on reh'g in part*, *Butts v. Barnhart*, 416 F.3d 101 (2d Cir. 2005).

**CONCLUSION**

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is

GRANTED, the Commissioner's Cross Motion for Judgment on the Pleadings (ECF No.

11) is DENIED, and this matter is REMANDED to the Commissioner for further

administrative proceedings consistent with this opinion.  The Clerk of Court is directed

to enter judgment and close this case.


IT IS SO ORDERED

Dated: Buffalo, New York
         December 4, 2018


                                        _s/ H. Kenneth Schroeder, Jr._
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**